IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CV-311-D

| | |
|---|---|
| RICHARD HUGH MCAULEY, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> Acting Commissioner of Social ) <br> Security, ) <br> ) <br>    Defendant. ) <br> _____ ) | **MEMORANDUM &** <br> **RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings, and Plaintiff's motion to set the case for trial. DE's-25, 26 & 28.[2] The time for filing any responses or replies has expired, and, therefore, the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. DE-20. For the following reasons, it is

RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-25) be DENIED,

---

[1] Acting Commissioner Colvin has been substituted for former Commissioner Astrue, pursuant to FED. R. CIV. P. 25(d)(1). Plaintiff also names as Defendants Attorney General Eric Holder and Thomas Walker, United States Attorney for the Eastern District of North Carolina. The Commissioner of Social Security is the only proper defendant in a case seeking review of denial of benefits pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 422.210(d); *see Kelley v. Astrue*, No. 4:11-cv-76, 2011 WL 6934562, at n.1 (E.D.N.C. Dec. 30, 2011) (citing *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000)). Accordingly, the undersigned RECOMMENDS that any claims against Defendants other than the Commissioner be dismissed. *Id.*

[2] Plaintiff is *pro se*; his letter (DE-25) stating that he "wants to enter a motion that orders the Social Security Admin[istration] to pay my disability benefits" has been construed as a Motion for Judgment on the Pleadings, and the arguments therein and in his subsequent response (DE-28) to Defendant's Motion for Judgment on the Pleadings have been considered.

and that Defendant's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that the final decision by Defendant be AFFIRMED.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for supplemental security income on December 31, 2009, alleging disability beginning December 31, 2009. *See* Tr. 84. His claim was denied initially and upon reconsideration. Tr. 98, 114. A hearing was held before an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated February 10, 2012. *Id*. at 13-21. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review on August 29, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1. Plaintiff filed the instant action on November 19, 2012. DE-1.

## ANALYSIS

This Court is authorized to review Defendant's denial of Plaintiff's claim for benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive….

42 U.S.C. § 405(g). "Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*

2

*v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Even "[w]here conflicting evidence allows reasonable minds to differ," the Court must defer to the Commissioner's decision. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).

## I. Motion for Jury Trial

Plaintiff requests that this case be set for trial. DE-25 at 1; *see also* DE-28 at 1. As described above, the Court's review of the Commissioner's decision is circumscribed: the Court may not re-weigh conflicting evidence or resolve factual disputes. *Craig*, 76 F. 3d at 589. In this context, a trial is not permitted. *Ginter v. Sec'y of Dep't of Health, Educ., & Welfare*, 621 F.2d 313, 313–14 (8th Cir. 1980) (*per curiam*) ("The district court has a limited role under § 405(g). That role is limited to reviewing the administrative record to determine whether there is substantial evidence to support the findings of the [Commissioner]. It cannot grant a trial *de novo* before either the court or a jury."); *accord Young v. Astrue*, 219 F. App'x 840, 842 (10th Cir. 2007). Accordingly, it is RECOMMENDED that Plaintiff's request for a trial (DE-25 at 1) be DENIED. *See Mullins v. Gardner*, 283 F. Supp. 85, 86 (W.D. Va. 1968) (substantial evidence rule "precludes a trial de novo"); *accord Sharp v. Astrue*, No. 4:10-cv-26, 2011 WL 672452, at *1 (W.D. Va. Feb. 17, 2011); *Tanner v. Astrue*, C/A No. 8:10-270, 2011 WL 2313042, at *3 (D.S.C. June 9, 2011).

## II. Social Security Act

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. 42 U.S.C. § 1382(a). The Act defines "disability" as the "inability to engage in <u>any</u> substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." *Id.* § 1382c(a)(3)(A) (emphasis added). More specifically, an individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or <u>whether a specific job vacancy exists for him, or whether he would be hired if he applied for work</u>.

*Id.* § 1382c(a)(3)(B) (emphasis added).[3]

Accordingly, the Social Security Administration has promulgated the following regulations establishing a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § [416.920]. If not, the analysis continues to determine whether,

---

[3] A portion of the statute has been highlighted here in an effort to clarify Plaintiff's misapprehension regarding the statutory disability system. He writes: "The [ALJ] even had the nerve to say I could get a job with a cane. [There] is [no] place in this country that will hire a person with a cane." DE-28 at 1. As emphasized in the main text, however, whether an individual would be hired is immaterial to whether that individual is "disabled" under the law. 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work . . . but you remain unemployed because of—(1) Your inability to get work . . . (3) The hiring practices of employers . . . (7) You would not actually by hired to do work you could otherwise do.").

4

> based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § [416.920(c)]. If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § [416.920(d)]; 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § [416.920(e)]; 20 C.F.R. § [416.945(a)]. If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § [416.920(f)].

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2009. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative osteoarthritis, affective disorders, and substance addiction disorders. *Id*. The ALJ then determined that Plaintiff did not have an impairment that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 15-16. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4] to perform light unskilled work, except with the need of a cane for ambulation. *Id*. at 16. The ALJ then found that Plaintiff was unable to perform any past relevant work. *Id*. at 19. But based on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 20. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 21.

Plaintiff has not raised specific assignments of error: he merely argues that the SSA's "case is weak," and that he is a great deal of pain. *See* DE-28 at 1-2. Taking into account

---

[4] An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. § 416.945(a).

Plaintiff's *pro se* status, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the undersigned has carefully reviewed the transcript in this case to ensure that the ALJ's decision applied the correct law and was supported by substantial evidence. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (stating that a court "should make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights"). As discussed below, the ALJ's decision meets this standard, and Defendant's motion for judgment on the pleadings should therefore be granted.

### A. Medical Evidence.

Plaintiff began treatment with Lundy Chiropractic in July of 2006, following a motor vehicle accident. Tr. 353. He complained of headaches, neck pain, right shoulder and arm pain, and both mid- and low back pain. *Id.* Upon examination, his gait was unremarkable, but some range of motion limitations were noted in plaintiff's right shoulder, cervical spine, and lumbar spine. Tr. 354. The chiropractor reviewed x-rays, which showed no fractures, and recommended daily physical therapy for two weeks, along with a referral to an orthopedist for potential cervical spine issues. Tr. 356. Plaintiff continued to visit Lundy Chiropractic several times a week through October 4, 2006. *See* Tr. 362-368; Tr. 259. His provider repeatedly stated in the records that "patient notes an erratic progress, with an overall improvement of symptoms yet there is [*sic*] still frequent periods of exacerbation." Tr. 362, 366, 367 (records from July, August, and September). At his final visit, Plaintiff had normal lumbar range of motion though some limitations persisted in his cervical range of motion. Tr. 259. His chiropractor concluded that he "responded favorably to conservative care," but that further physical therapy would not be a benefit. Tr. 260.

Based on Lundy Chiropractic's recommendation, Plaintiff also had at least three appointments with Dr. Leighton, an orthopedist. Tr. 370-381. Based on Plaintiff's description of

6

pain and a positive shoulder adduction release sign, Dr. Leighton opined that Plaintiff likely had cervical radiculitis.[5] Tr. 371. At the initial exam, Plaintiff's reflexes and motor strength were normal. Tr. 370. Following an MRI in August 2006, Dr. Leighton noted that Plaintiff had some mild degenerative joint change in his shoulder, but that it was otherwise normal. Tr. 372. Plaintiff's cervical spine MRI showed multilevel degenerative changes, including an osteophyte[6] complex that caused "moderate to severe right neural foraminal[7] narrowing." *Id.* Based on these MRI results, Dr. Leighton concluded that cervical radiculitis was causing Plaintiff's pain and that he should be seen by a neurosurgeon for a consult. Tr. 380. Dr. Leighton also added that while he was concerned about writing a Lorcet prescription, "[Plaintiff] may require possibly a visit to the pain management folks first for a selective nerve root block but I do suspect this is real based on what I saw on his MRI study." *Id.*

Plaintiff next saw Dr. Melin at Coastal Neurosurgical Associates and Spine Center for examination. Tr. 384. Plaintiff reported that turning his neck caused pain to increase, though he had full strength in his upper extremities and full range of motion in his right shoulder. *Id.* Dr. Melin diagnosed cervical spondylosis[8] with radiculopathy without myelopathy,[9] myofascial[10] neck pain, and "questionable right shoulder pathology." *Id.* He concluded that the "largest extent" of Plaintiff's pain was of myofascial origin. *Id.* Plaintiff requested surgery, but Dr. Melin informed him that there was no surgical intervention for his condition and that he should

---

[5] Radiculitis is equivalent to radiculopathy, a general term referring to disorder of the spinal nerve roots. STEDMAN'S MEDICAL DICTIONARY 347550, 347610 (27th ed. 2000).

[6] A bony outgrowth or protuberance. STEDMAN'S 289250.

[7] The narrowing of intervertebral openings. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 729-730 (32d ed. 2012).

[8] Spondylosis is the stiffening or fixation of vertebral joints, and often refers to degenerative changes in the spine more generally. STEDMAN'S 23900, 382100.

[9] Myelopathy refers to a disorder of the spinal cord itself. STEDMAN'S 264850.

[10] Relating to the fascia—fibrous tissue—surrounding and separating muscle tissue. STEDMAN'S 265710, 145630.

7

seek pain management; Dr. Melin also prescribed Lorcet. *Id.* Two months after Plaintiff's

appointment, Mr. Hensler, the Certified Physician's Assistant who worked with Dr. Melin on

Plaintiff's case, received a phone call from the Center for Pain Management that Plaintiff was

rude and exhibited misconduct in seeking additional pain medications, that the Center would no

longer be providing him treatment, and that Plaintiff would need to go to his primary care doctor

for pain medication. Tr. 385. Mr. Hensler additionally noted that Plaintiff "does not have any

significant abnormal pathology to justify neurosurgery." *Id.*

Accordingly, Plaintiff saw Dr. Pressley at IntraMed Family Practice for medication for

his cervical pain from July of 2007 through June of 2009. Tr. 437-441, Tr. 476, Tr. 252-286. He

was originally prescribed only Lorcet, *e.g.* Tr. 441, but was also prescribed Xanax, Tr. 435, and

Valium, Tr. 429, beginning in 2008. Virtually every record from Dr. Pressley, in Plaintiff's

monthly visits for medication refills, reported that Plaintiff "continues to get good symptom

relief and improved function with meds without side effects."[11] *E.g.*, Tr. 431, Tr. 280, Tr. 274,

Tr. 266. As another example, in August of 2008, Plaintiff reported "good symptom control and

improved function." Tr. 283. Plaintiff reported in December 2008 that he tripped on a step and

fell and hurt his ankle. Tr. 268. He reported continued pain in January of 2009, but said that he

was "getting some good relief with his ankle brace." Tr. 266. At his last visit with Dr. Pressley in

June 2009, Plaintiff's gait had no abnormalities; though Plaintiff reported pain in his back, neck,

ankle and shoulder upon palpitation, Dr. Pressley's plan was simply to continue the current

medication for treatment. Tr. 252. As of this visit, however, Plaintiff failed a drug screen and

was informed on June 22, 2009 that because he had tested positive for cocaine use and violated

---

[11] Earlier handwritten records do not use this precise phrase but do note good symptom control or symptom relief. Tr. 439, 437, 297.

8

his controlled substance contract, IntraMed Family Practice would no longer be able to provide Plaintiff with controlled substances, i.e., his pain medication. Tr. 388.

The remaining medical records are unremarkable. Plaintiff visited the emergency room at Brunswick Community Hospital on several occasions from September 2009 through March of 2010, generally for minor trauma. Tr. 499-516. He reported an alleged assault in December 2009 and presented with injuries on his face and right elbow, and reported a pain level of 7/10. Tr. 507-09. X-rays were negative and Plaintiff was prescribed rest, ice, a sling, and Tylenol. Tr. 510-512. Plaintiff again was allegedly assaulted in January 2010, and reported to the emergency room in pain and mild distress. Tr. 307. He had mild swelling, tenderness, contusions, and some superficial abrasions, and was discharged home in improved condition. Tr. 310. He was instructed to use ice and Neosporin, and was given Vicodin and Librium for pain. Tr. 311.

1. Consultative Examinations

Plaintiff underwent consultative examinations with Dr. Caughey and Mr. Tonn, M.S. for physical and mental examinations, respectively. Tr. 339-350.

In his February 8, 2010 examination with Dr. Caughey, Plaintiff reported that he did not presently take medications. Tr. 339. He complained of pain in both shoulders, but his range of motion was normal. *Id.* Plaintiff also mentioned that he has frequent pain and often falls. *Id.* Plaintiff could not heel or toe walk, nor squat and rise, and his gait featured a limp. Tr. 340. Plaintiff had normal grip strength and could perform hand and finger movements. *Id.* X-rays showed moderate degenerative osteoarthritis in Plaintiff's knee. Tr. 341. Plaintiff also informed Dr. Caughey that he could climb stars slowly, could push, pull, and raise his arms above shoulder level, and can pick up items, deal with clothes, prepare meals, and handle papers. Tr. 342. His extremity strength was normal. Tr. 345. In sum, Dr. Cauley concluded that Plaintiff's

9

impairments did not affect his ability to sit, handle objects, speak, hear or travel, and that his ability to stand, move about, lift, and carry were only mildly affected. Tr. 343.

Mr. Tonn discussed Plaintiff's prior car accident, and Plaintiff reported that he has had memory problems since the car accident. Tr. 348. Plaintiff claimed to hear voices, and felt that he was depressed because he was unable to be as active as he previously was. *Id.* Testing revealed that his recent memory was normal, but that his remote memory was "vague and inconsistent." Tr. 349. He was able to answer some questions regarding basic information and arithmetic. *Id.* In sum, Mr. Tonn concluded that Plaintiff had an adjustment disorder with depressed mood, and that he would be able to perform simple, repetitive, routine tasks, and interact with others, respond appropriately to supervision, and maintain concentration and persistence. Tr. 350.

### B. Plaintiff Received a Fair Hearing.

Based upon the hearing transcript in this matter, the undersigned has considered whether Plaintiff has demonstrated either ALJ bias or the absence of a fair hearing. *Cf. Traguth*, 710 F.2d at 95. The ALJ was, at times, short with Plaintiff. Some of his questions crossed the line from inquisitorial to adversarial. *See, e.g.*, Tr. 38, Tr. 44 ("Sir, when your urine sample provided on June 8th was positive for cocaine use, is that how you sell cocaine?"). In addition, his commentary on Plaintiff's memory lapses was impatient and hectoring. Tr. 43 ("Well, Counsel, since your client doesn't seem to remember much, I just have a few more questions and then you can ask questions."). But as explained below, taking the entire record into account, this behavior neither evidenced improper partiality nor deprived Plaintiff of a fair hearing.[12]

---

[12] This conclusion is not intended to condone outward expressions of annoyance and impatience: "Applicants for social security disability payments . . . are entitled to be treated with respect and dignity no matter what the merits of their respective claims." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).

10

The right to procedural due process applies to social security benefits determinations, *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971), and an "impartial decision maker is an essential element of due process." *Bowens v. v. N.C. Dep't of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Because "Social Security proceedings are inquisitorial rather than adversarial," the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). The SSA's regulations implement this principle: the hearing is to be "conduct[ed] in an informal, nonadversary manner." 20 C.F.R. § 416.1400(b). Nonetheless, "[a]n individual is not disqualified [from judging a case], however, because he has formed opinions about a case based on his or her participation in it." *Bowens*, 710 F.2d at 1020. It is only when remarks "display a deep-seated favoritism or antagonism that would make fair judgment impossible" that bias may be established.[13] *Liteky v. United States*, 510 U.S. 540, 555 (1995). "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555-56.

Accordingly, a plaintiff alleging ALJ bias bears a "heavy burden" of proof. *Simpson v. Macon County, N.C.*, 132 F. Supp. 2d 407, 411 (W.D.N.C.2001)). ALJs are entitled to the same "presumption of honesty and integrity" as are judges. *Morris v. City of Danville*, 744 F.2d 1041, 1044 (4th Cir. 1984). As such, prejudice or bias must be evident from the record and not based on speculation or inference. *Hucks v. Colvin*, No. 2:12-cv-76, 2013 WL 1810658, at *7 (N.D. W. Va. Apr. 3, 2013) (citing *Navistar Int'l Trans. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991).

---

[13] Another means of establishing bias is by showing that a judicial opinion derives from an extrajudicial source, but there is absolutely no indication that this occurred here. *See Liteky*, 510 U.S. at 555.

11

Case 7:12-cv-00311-D   Document 33   Filed 12/13/13   Page 11 of 20

Here, as in *Carter v. Astrue*, No. 2:11-cv-665, 2013 WL 1165172, at *8 (E.D. Va. Mar. 20, 2013), "while the ALJ's statements during Plaintiff's hearing were impolite and intemperate, they did not prevent Plaintiff from fully developing the factual record." *See also Haley v. Colvin*, No. 3:12-cv-1219, 2013 WL 4647525, at *5 (D.S.C. Aug. 29, 2013) (no bias evident even though ALJ was "irritated, impatient, and abrupt"). Importantly, Plaintiff was represented by an attorney at the hearing, who questioned Plaintiff extensively about his impairments, without interruption. *Cf. Ventura*, 55 F.3d at 901 (claimant was represented by a non-attorney, who was repeatedly interrupted and browbeated by the ALJ); *Perez v. Heckler*, 581 F. Supp. 1095 (N.D. Ind. 1984) (claimant was represented by a non-attorney, and ALJ made "derogatory remarks regarding claimant's ethnic background [and] sexual prowess). Moreover, as discussed below, the ALJ's decision, which credited at least some of Plaintiff's subjective complaints, was supported by substantial evidence and adequate explanation. "[S]o long as all the evidence favorable to [claimant] was in fact adduced and fairly considered by the ALJ en route to his reaching an adverse decision based on other substantial evidence, the fair hearing test has been met." *Evans v. Bowen*, 675 F. Supp. 1117, 1124-25 (N. D. Ill. 1987); *accord Gibson v. Colvin*, No. 12-858, 2013 WL 4778794, at * 19 (W.D. Pa. Sept. 5, 2013) (no bias where there was no indication that the ALJ failed to consider the evidence, and ALJ's conclusions were supported by substantial evidence). In sum, the ALJ's impatient remarks did not rise to the level of prejudice or bias, and as discussed below, his opinion was carefully considered and supported by substantial evidence.

### C. Substantial Evidence Supports the ALJ's Findings that Plaintiff's Impairments Did Not Meet Or Medically Equal any Listing.

The "Listing of Impairments" details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments

12

meet all the criteria of a particular listing, 20 C.F.R. § 416.925(c)(3), or are medically equivalent to a listing, *Id.* § 416.926, this alone establishes that the claimant is disabled. *Id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), *superseded by statute on other grounds*; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As such, a claimant must present medical findings equal in severity to all the criteria[14] for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530-31; *see also* 20 C.F.R. § 416.925(c)(3). The regulations provide:

> Can your impairment(s) meet a listing based only on a diagnosis? No. Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.

20 C.F.R. § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

---

[14] Alternatively, a claimant may show that an unlisted impairment, or combination of impairments is medically equivalent to a listed impairment, but she must likewise present medical findings equal in severity to all of the criteria for the most similar impairment. 20 C.F.R. § 416.926(a).

13

Here, the ALJ found that Plaintiff did not meet Listing 1.02, Listing 1.04, Listing 12.04, and Listing 12.09.  Tr. 15-16; *see* 20 C.F.R. Part 404, subpart P, App. I.  Substantial evidence supports this conclusion.  It should be noted, however, that in discussing Plaintiff's ability to ambulate effectively, Defendant and the ALJ both use "Listing 1.04" as a shorthand for "Listing 1.04(C)," the most pertinent portion of the listing. DE-27 at 10; Tr. 15.  The inability to ambulate effectively, as defined in Listing 1.00(B)(2)(b)(1), is a requirement for Listing 1.04**(C)**, not Listing 1.04 more generally:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. **With**:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, <u>motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss</u> and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and <u>resulting in inability to ambulate effectively</u>, as defined in 1.00B2b.

20 C.F.R. Part 404, subpart P, App. I, § 1.04 (emphasis added).[15]  That is, a claimant may satisfy any one of three subparagraphs in the Listing, and only one of those subparagraphs requires an

---

[15] As Defendant correctly observes, an inability to ambulate effectively means an inability to ambulate without the use of a device that requires *both* upper extremities. DE-27 at 10; 20 C.F.R. Part 404, subpart P, App. I, § 1.00(B)(2)(b)(2). Accordingly, Plaintiff's use of a cane does not bring him within the ambit of 1.04(C). *See* Tr. 15.

inability to ambulate effectively. *Id.* While he discusses Plaintiff's inability to ambulate effectively, the ALJ does not explicitly consider in his decision whether Plaintiff met the requirements of Listing 1.04(A) or 1.04(B). *See* Tr. 15. Nonetheless, the evidentiary basis for the ALJ's conclusion that Listing 1.04 was not met is evident from the record, and from the ALJ's RFC determination. *See Green v. Chater*, No. 94–2049, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995) (unpublished) (finding the ALJ had adequately explained his evaluation of the claimant's impairments, even though he did not explicitly address why specific listings were not met).

First, there was no documented sensory or reflex loss, as required by Listing 1.04(A). *See, e.g.*, Tr. 515 (January 2010 ER visit notes "No motor deficit. No sensory deficit. Reflexes normal."), Tr. 535 (March 2010 ER visit, same). And there is no evidence whatever in the medical records that Plaintiff suffered from spinal arachnoiditis,[16] as required by Listing 1.04(B). The ALJ's failure to explicitly list his reasons for rejecting paragraphs (A) and (B) of Listing 1.04 is therefore not fatal: an ALJ is only required to "explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." *Kelly v. Astrue*, No. 5:08–cv–289–FL, 2009 WL 1346241, at *5 (E.D.N.C. May 12, 2009) (quoting *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999)).

Moreover, the ALJ's RFC determination indicates that he sufficiently considered whether Plaintiff's cervical degenerative disc disease met or equaled Listing 1.04. Tr. 18-19 (discussing normal reflexes and no motor or sensory deficits). Even where the ALJ's discussion of the Listings is "spare," the substantive discussion in the RFC findings can provide a "sufficient

---

[16] Arachnoditis is inflammation of the arachnoid membrane, which surrounds the spinal cord in the vertebral canal. STEDMAN'S 30970, 30940.

15

basis" for a step three determination: "collapsing of the analysis of the evidence by an ALJ is not [] preferred . . . but it is not necessarily reversible error." *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *3 (E.D.N.C. Feb. 23, 2009); *accord Buchanan v. Astrue*, No. 4:10-cv-167-FL, 2011 WL 5439087, at *5 (E.D.N.C. Aug. 15, 2011) (substantial evidence in record to support step 3 determination where testing did not reveal sensory or reflex loss). This finding is consistent with the general principle that "[e]rrors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Austin v. Astrue*, No. 7:06-cv-622, 2007 WL 3070601, at *6 (W.D. Va. 2007) (citing *Camp v. Massanari*, 22 F. App'x 311 (4th Cir. 2001)). Here, though the ALJ could have been more thorough in his analysis regarding the Listings, his subsequent development of the evidence during the RFC determination adequately supports his findings, and remand is not warranted on this basis. *Jones*, 2009 WL 455414, at *3; *accord Childers v. Astrue*, No. 1:09-cv-225, 2012 WL 1267897, at *6 (M.D.N.C. Apr. 16, 2012).

### D. Substantial Evidence Supports the ALJ's RFC and Credibility Determinations.

Where a claimant makes subjective assertions of pain or other disabling symptoms, the ALJ applies a two-step process. *Craig*, 76 F.3d at 594. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting analogous provision of Social Security regulations, 20 C.F.R. § 404.1529(b)) (emphasis omitted). Second,

> [i]t is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

16

*Id.* at 595. At this second step, the ALJ considers "the entire case record, including the objective medical evidence, the individual's own statements . . . and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996). Because "symptoms [can] sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all other information about symptoms, including statements of the claimant, must be "carefully consider[ed]" in the second part of the evaluation. 20 C.F.R. § 416.929(c)(3). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." *Craig*, 76 F.3d at 595.

"[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). An ALJ's credibility determination therefore "should be accepted by the reviewing court absent exceptional circumstances." *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. Air Products & Chemicals, Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*, No. 5:11-cv-63, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were neither unreasonable nor contradicted by other findings).

Here, the ALJ found that while Plaintiff had medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms, "the claimant's statements

17

concerning the intensity, persistence and limiting effects of these symptoms are not fully credible," because "the medical evidence of record does not support the claimant's allegations as to his severely reduced physical capabilities." Tr. 18. First, the ALJ noted that in Plaintiff's most recent visit to Dr. Pressley, Plaintiff reported "good symptom relief and improved function with medications without side effects." Tr. 18; *see also* Tr. 253. The ALJ also took into consideration Plaintiff's records from emergency room visits, Tr. 18, which reflect that Plaintiff was in good condition, had normal range of motion of his extremities and normal reflexes, and no motor or sensory deficits. In addition, the ALJ considered other opinion evidence and Plaintiff's testimony regarding his activities of daily living.

The ALJ's conclusions are supported by the record. Contrary to his testimony at the hearing, Tr. 48, Plaintiff repeatedly told his pain medication provider that the medication helped and did not cause side effects. Tr. 252-283; *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"); *Love v. Astrue*, No. 7:07-cv-126, 2008 WL 2273616, at *5 (W.D. Va. May 30, 2008) (substantial evidence supported ALJ decision where part of reason treatment was discontinued was claimant's dismissal from pain relief practice for positive drug screen). As to Plaintiff's January 2010 emergency department visit, the records note that the patient "left ambulatory," without mentioning gait issues or severe limitations on movement, and commented that no fall risk was identified. Tr. 519-521. Finally, the record reviewed by the ALJ is devoid of Plaintiff receiving any treatment after June of 2009 for anything other than minor trauma or routine medical concerns. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the

18

treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility.") (citations omitted).

Moreover, the ALJ did not wholly discount Plaintiff's allegations regarding the intensity and limiting effects of his symptoms. The ALJ gave state DDS assessments limited weight because they had less evidence before them than did the ALJ, and ALJ "credited some of the claimant's subjective complaints in reducing this [RFC] to a range of light work." Tr. 18. The ALJ also took Plaintiff's back and knee problems into account in limiting him to light work with the assistance of the cane, and noted that he "allow[ed] the claimant full benefit of doubt with respect to the need for the assistive device." *Id.*

In short, the ALJ conducted a thorough summary of the record and his RFC findings were supported by citations to that record. The undersigned finds no reversible error in the ALJ's assessment and consideration of Plaintiff's credibility or functional limitations. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). The records in this case provide "more than a scintilla of evidence," *Laws*, 368 F.2d at 642, in support of the ALJ's finding that Plaintiff retained the residual functional capacity to perform light work, with use of a cane for ambulation. Accordingly, Plaintiff's assignments of error as to the ALJ's RFC determination are without merit.

In sum, "[a]lthough the medical records establish that the Plaintiff experienced pain . . . to some extent or degree . . . it is the ALJ's responsibility, not the Court's, 'to reconcile inconsistencies in the medical evidence.'" *Mecimore v. Astrue*, No. 5:10-cv-64, 2010 WL 7281096, at *9 (W.D.N.C. Dec. 10, 2010); *Green v. Astrue*, 3:10-CV-764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) ("An individual does not have to be pain-free in order to be found

'not disabled.' ") (citing *Hays*, 907 F.2d at 1457–58), *adopted by* 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The ALJ applied the correct law, and his findings were supported by substantial evidence.

## **CONCLUSION**

For the aforementioned reasons, it is RECOMMENDED that:

(1) Any claims against Defendants other than Acting Commissioner Colvin be DISMISSED;

(2) Plaintiff's Motion for Judgment on the Pleadings (DE-25) be DENIED;

(3) Defendant's Motion for Judgment on the Pleadings (DE-26) be GRANTED; and

(4) The final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, December 13, 2013.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE